W. J. Barth, Appellee, v. Leonard Keller and Blanche Tayne, Defendants. Leonard Keller, Appellant.

Gen. No. 41,676.

Heard in the second division of this court for the first district at the April term, 1941. ▮▮▮▮ Opinion filed June 19, 1942.

AUW & KNITTEL and MAX M. & SAMUEL GROSSMAN, all of Chicago, for appellant; LOUIS N. GROSSMAN, of Chicago, of counsel.

GOLAN & GOLAN, of Chicago, for appellee; SAMUEL L. GOLAN, of Chicago, of counsel.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

By this appeal defendant Leonard Keller seeks to reverse a judgment for $750 rendered against him upon the verdict of a jury in an action brought by plaintiff, W. J. Barth.

The complaint alleged substantially that plaintiff was a physician and defendant was a dentist; that they shared a suite of offices at 2753 North Western avenue, Chicago, consisting of a private office for each of them and a reception room which they used in common; that defendant employed one Blanche Tayne as a receptionist; that defendant and said Blanche Tayne conspired to injure plaintiff in his good name and credit, to bring him into public scandal and disgrace and to cause him to be imprisoned or fined or both by maliciously instituting a criminal prosecution charging him with indecent exposure of his person in viola-

tion of "Section 4221 of the ordinances of the City of Chicago"; that on April 5, 1938 Blanche Tayne filed a complaint in the municipal court of Chicago charging plaintiff with indecent exposure of his person in violation of the aforesaid ordinance and procured a warrant for his arrest; that plaintiff was arrested April 13, 1938; that when the case against him in the municipal court was called for trial on April 15, 1938, it was dismissed for want of prosecution and he was discharged from custody; and that plaintiff sustained damages to the extent of $10,000 by reason of the alleged conspiracy and the action brought against him in the municipal court.

Both Keller and Blanche Tayne were made defendants in the instant action but the latter was never served with summons. Defendant Keller filed an answer denying all the material allegations of the complaint and particularly those allegations charging him with conspiracy.

Dr. Keller states his theory in his brief as follows: "Defendant denies that he entered into any conspiracy with Blanche Tayne or any other person to institute or have instituted any criminal proceeding or any proceedings of any kind against the plaintiff. He denies that he was in any way responsible for the proceedings instituted by Blanche Tayne; that he did not sign the complaint or have anything to do with the signing of the complaint which instituted the proceedings against plaintiff in this case. Defendant further contends that there was no proof of a malicious prosecution and further contends that there was no proof of a conspiracy between him and Blanche Tayne, and that the evidence does not support the allegations of the complaint; that the termination of the case by agreement of the parties, whereby the suit was dismissed for want of prosecution and defendant discharged from custody is not such a determination of a criminal proceeding on which a suit for malicious prosecution may be predicated. That the evidence

fails to show that the plaintiff suffered any actual damages.''

Plaintiff's theory is that ''the defendant, after quarreling with plaintiff, did, in every conceivable manner, harass plaintiff in an effort to inflict harm upon him. After feuding with plaintiff for a long period of time, he conceived the idea of hiring Mrs. Tayne as a receptionist and conspired with her to have plaintiff arrested, charging him with an offense involving moral turpitude, so that it would harm plaintiff in his professional capacity.''

Plaintiff is a physician and surgeon and defendant is a dentist. They became office associates in the summer of 1935 in a suite at 2753 North Western avenue, Chicago. Plaintiff maintained office hours during the entire day until 6 p.m. in his office at said address. Defendant also had an office in the Marshall Field Annex Building, where he practiced his profession during the morning. His office hours at the Western avenue address were from 1:30 or 2 p.m. until late in the evening. For the first two years or until the summer of 1937, the parties were on friendly terms. Each had a telephone in his private office and under an arrangement between them plaintiff answered defendant's telephone calls when the latter was not present in his office in the morning and defendant took care of plaintiff's telephone calls in the evening. In the summer of 1937 plaintiff learned that defendant had failed to answer some of the former's telephone calls and a heated argument ensued, as a result of which the friendly relationship that had theretofore existed between the parties ceased. Thereafter there was almost constant bickering and dissension between them. It became necessary for defendant to engage somebody to take care of his office and telephone calls during the morning and until he arrived at his Western avenue office. For that purpose he employed a young married woman, who with her husband and infant child occupied a small apartment immediately

across the hall, one room of which adjoined defendant's private office. There was a connecting door between said apartment and his private office, which defendant made available to this woman so that she might answer his telephone calls. It is clear from the evidence that plaintiff's conduct toward this woman was reprehensible and that he finally persuaded and influenced the landlord to bring about her removal from her apartment. Plaintiff then rented this apartment himself. Because of her removal from the building, this young woman was unable to continue in defendant's employment. In February 1938 plaintiff engaged one Blanche Tayne as a receptionist and to answer his telephone calls, Mrs. Tayne and her husband having theretofore been patients of his. March 31, 1938 Mrs. Tayne called the police. Police officer William Runge, who responded to the police call, testified: "When we arrived there we walked up the stairs. It was the second floor. And the woman was there . . . we asked her what the trouble was . . . And she said that Dr. Barth had annoyed her and exposed his person to her that morning, and I told her I would talk to Dr. Barth about it, and knocked at his office door. And I told him what she accused him of. And in the meantime, Dr. Keller came in. And Dr. Barth flew in a rage and wanted to fight with Dr. Keller and I stopped him there, and I said, 'The only way for those to settle this is for this woman to go see the warrant clerk on the following day or on a Monday and to swear out a warrant, and to see whether they would give her a warrant or not. That was all up to the warrant clerk.' And she said she would. And we left after that. Dr. Barth denied the charges that this woman put to him." Officer Runge also testified that Dr. Keller did not arrive on the scene until after the officer had talked to Mrs. Tayne and confronted Dr. Barth in his office with Mrs. Tayne's charge against him.

Defendant testified that Mrs. Tayne telephoned him

on the day in question and informed him as to plaintiff's conduct and that he advised her to tell her husband, who worked in a nearby garage. Defendant was unable to leave his downtown office at once on account of patients who required his attention. When he did reach his office on the northwest side the police officers were already there. According to the defendant Dr. Barth was very belligerent and "Mrs. Tayne was tearful and did not have very much to say there at all and the police officer told her in my presence to take out a warrant against Dr. Barth."

On the same day, March 31, 1938, Mrs. Tayne went to the police station with her husband to procure a warrant for Dr. Barth's arrest but because of the absence of the warrant clerk she was unable to secure such warrant. April 5, 1938 defendant drove Mrs. Tayne to the police station in his car, where she signed the necessary complaint and the warrant was ordered to issue for plaintiff's arrest.

There is considerable evidence in the record concerning extraneous matters, which we have not mentioned in the foregoing statement of the case because it was entirely irrelevant and should have been excluded. We think the facts as stated fairly present the evidence material to the only issue in this proceeding. The gist of the charge made by Dr. Barth in his complaint in the instant case is that Dr. Keller conspired with Mrs. Tayne to procure a warrant for plaintiff's arrest on the charge of indecent exposure of his person and to prosecute him on such charge. We have searched the record in vain for evidence, either direct or circumstantial, which supports the allegations of plaintiff's complaint.

The only evidence in the record upon which plaintiff could possibly place any reliance to sustain his charge of conspiracy against defendant is that the latter drove Mrs. Tayne to the police station upon the occasion of her second visit there to procure the warrant for Dr. Barth's arrest. It clearly appears that Dr. Keller

drove her to the police station merely as a matter of accommodation. It has not been shown that Dr. Keller advised, persuaded or influenced Mrs. Tayne to procure the warrant for Dr. Barth's arrest. Neither has it been shown that when Dr. Keller drove Mrs. Tayne to the police station he spoke to any police official, police officer, warrant clerk or city prosecutor concerning Mrs. Tayne's complaint or the procurement and issuance of the warrant. In fact when they reached the police station he left her there and drove away. The evidence is conclusive that Mrs. Tayne was solely responsible for the issuance of the warrant for plaintiff's arrest and that she and the defendant did not conspire in any manner to procure said warrant.

The case in the municipal court against Dr. Barth was not dismissed for want of prosecution because of the failure of Mrs. Tayne to appear and prosecute it. She was present in court with her witnesses and it clearly appears that when she advised Judge WEISS of the municipal court that she did not desire to proceed with the prosecution of Dr. Barth, she did so as the result of an agreement entered into between Dr. Barth's attorney and herself before the opening of the court. The principle of law is well established that where a criminal or quasi criminal prosecution is terminated without regard to its merits or propriety by agreement or settlement of the parties or solely by the procurement of the accused as a matter of favor, there is no such termination as will support an action of malicious prosecution or an action charging a conspiracy to prosecute maliciously. (*Emery v. Ginnan*, 24 Ill. App. 65; *Halberstadt v. New York Life Ins. Co.*, 194 N. Y. 1.)

Not only was the verdict returned by the jury against the manifest weight of the evidence as to the material issues of this case but there was absolutely no evidence submitted in support of the charge of conspiracy against defendant.

The testimony of Dr. Barth and his wife as to certain

anonymous telephone calls received by them reflecting upon plaintiff's morality were received in evidence over the defendant's objection. These calls were claimed to have been made by girls who used such names as "Mary, Joan or Rose." No attempt was made to connect Dr. Keller with such telephone calls or the persons making them and this evidence was clearly inadmissible. It could only have been calculated to prejudice the jury against defendant, which it unquestionably did, since it is difficult to account for the verdict on any other theory than that the jury was prejudiced.

Other points are urged which also would require the reversal of the judgment entered herein but in view of what has already been shown we deem further discussion unnecessary.

For the reasons stated herein the judgment of the circuit court is reversed and the cause is remanded.

*Reversed and remanded.*

SCANLAN, P. J., and FRIEND, J., concur.