Edgar C. Hargadine and Zella M. Hargadine, Plaintiffs-Appellants, v. David H. Sharkey, as County Superintendent of Highways of Stark County, Illinois, and County of Stark, Illinois, Defendants-Appellees.

Edgar C. Hargadine and Zella M. Hargadine, Plaintiffs-Appellants, v. David H. Sharkey, as County Superintendent of Highways of Stark County, Illinois, Defendant-Appellee.

Gen. Nos. 10,834, 10,884.

Second District.

January 7, 1956.

Released for publication January 25, 1956.

Case Nos. 10834, 10884: Robert H. White, of Geneseo, for plaintiffs-appellants.

Eugene H. Rennick, Jr., of Toulon, for defendants-appellees.

PRESIDING JUSTICE DOVE delivered the opinion of the court.

On July 22, 1952, appellants, Edgar C. Hargadine and Zella M. Hargadine, husband and wife, filed their complaint in the Circuit Court of Stark County. Thereafter and on December 9, 1953, they filed their amended complaint which consisted of six counts, and on July 14, 1954, an amended count five was filed. The sufficiency of the amended complaint, as so amended, was challenged by a motion to dismiss, and upon a hearing the court sustained the motion to dismiss as to counts one and five and denied the motion to dismiss as to counts two, three, four, and six. The plaintiffs elected to stand by counts one and five of the amended complaint, as amended, and an appropriate final order was entered on December 6, 1954, in bar of the action set forth in those counts. The plaintiffs appealed, and that case appears in this court under General Number 10834. Apparently count six was further amended, and on June 16, 1955, the court sustained a motion of the sole defendant in that court, David H. Sharkey, as County Superintendent of Highways of Stark County, Illinois, to dismiss count six of the amended complaint, as so amended, and from an appropriate judgment in

211

bar of the action set forth in that count the plaintiffs appealed, and that case appears in this court under General Number 10884. Both appeals are disposed of in this opinion.

Amended count one, as amended, alleged that the plaintiffs were the owners of certain described farm land; that State Aid Road No. 4, Stark County, Illinois, approximately sixty feet wide, passes diagonally through plaintiffs' land; that Spoon River runs in a southwesterly direction through a portion of plaintiffs' land and intersects State Aid Route No. 4 at approximately right angles near the center of a described quarter-section of land owned by the plaintiffs; that west of Spoon River the land of the plaintiffs is bottom land, and State Aid Road No. 4 runs through this bottom land for a distance of approximately 100 rods to a bluff and then slopes upward over the bluff; that prior to 1939 there were ditches on both sides of State Aid Road No. 4 running from the top of the bluff and along each side of the road to Spoon River, so that the water coming into the road at the top of the hill and on the side slope of the hill drained through the ditches to the river; that in the year 1939, certain improvement work was done at this location on State Aid Road No. 4 by widening the road and the slope over the hill was lessened; that in making these improvements, almost the entire right of way for the road was used, and the ditches on both sides of the road from a point near the bottom of the hill extending to the river were filled or destroyed—thus eliminating the channels by which the water falling on the road and the hill could be carried to the river; that as a result thereof, the water now falling on the road and draining into the road comes down the ditches on each side of the road to a point near the bottom of the hill and then, because of a lack of any further channel along either side of the road, flows out onto the farm land of plaintiffs on both sides of the road. This count averred that the County

of Stark had no legal right to so divert the hill water and to cast it upon plaintiffs' land and alleged that as a result thereof plaintiffs suffered and will continue to suffer irreparable damage from the acts done by the defendants resulting from the diverting and flowing of water on the land of the plaintiffs.

The prayer of this count of the complaint is that the defendants, David H. Sharkey, as County Superintendent of Highways of Stark County, Illinois, and the County of Stark, Illinois, and its agents and representatives, "be restrained, by injunction, from diverting the water flowing down the road from the top of the hill out onto the plaintiffs' land on both sides of said State Aid Road No. 4, and be ordered to construct adequate ditches on each side of State Aid Road No. 4, at the location herein referred to, to adequately and properly carry the water coming from the hill and road directly to Spoon River, and, in connection therewith, to take the proper legal action to secure additional right of way for said ditches."

Count V of the amended complaint, as amended, in addition to alleging plaintiffs' ownership of the land described in count one and the location of Spoon River and State Aid Road No. 4 in relation thereto, then charges that Spoon River intersects State Aid Road No. 4 near the center of the described quarter-section of land which plaintiffs own; that from the point where Spoon River intersects this State Aid Road, Spoon River extends in a northeasterly direction through the lands owned by the plaintiffs, and that on the West side of Spoon River from the Slackwater Bridge (which is a bridge located on State Aid Road No. 4 where it crosses Spoon River) northeasterly to a point in the west half of a described quarter-section of land, there is a levee constructed of sufficient height and width to prevent floodwaters of Spoon River from overflowing the lands of the plaintiffs; that Indian Creek flows from the northwest in a southeasterly di-

213

rection through the lands of the plaintiffs into Spoon River, and that entirely along the southwesterly side of Indian Creek, where this creek borders the lands of the plaintiffs, there exists a levee of sufficient height and width to prevent the floodwaters of Indian Creek from flowing onto the lands of the plaintiffs, which levee extends from the bluffs to the junction of Indian Creek and Spoon River.

This count then goes on to allege that during the month of April 1950, the County of Stark, through its agents and representatives, permitted a large number of logs and a large quantity of debris to accumulate and become jammed in Spoon River at Slackwater Bridge; that these logs and this debris became lodged in the piers and abutments of Slackwater Bridge to form a dam in Spoon River, and that the defendant, County of Stark, knew of the existence of these logs and this debris and of the approximate consequences that might result from their accumulation; that on or about April 25, 1950, the waters in Indian Creek and Spoon River rose to flood stage as a result of rains to the north and this water was unable to pass under Slackwater Bridge in a satisfactory manner because of the logs and debris which had accumulated, and this water was thus impounded and caused to rise to a higher level because of the dam so created; that as a direct and proximate result of the dam, the water in Spoon River overflowed its west bank, where there was no levee, and flowed in a southwesterly direction to Indian Creek, and this water flowed with such force and rapidity that it caused the levee on the southwest side of Indian Creek to "blow out" in three places, digging holes in the lands of the plaintiffs ranging in depth to five feet and comprising an area of approximately twenty acres; that as a direct and proximate result of these washouts this land of the plaintiffs is not presently tillable and must be completely filled in with good, black, fertile soil if it is to be restored to its

214

former degree of fertility; that as a further direct and proximate result of the act of the defendant, County of Stark, plaintiffs suffered damage in the year 1950 by the loss of thirty acres of crops; that in each of the years 1951 and 1952 the plaintiffs suffered the loss of crops on twenty acres of land and suffered the loss of two hundred rods of fence which was torn out by the water coming through the "blow outs" in the Indian Creek levee, and that said damage would not have occurred had it not been for the logs and debris which had accumulated at Slackwater Bridge. This count concluded by charging that the County of Stark, in permitting said logs and debris to so accumulate, has unlawfully and without just compensation acquired and appropriated to its own use that part of the plaintiffs' lands and property damaged as aforesaid, contrary to Article 2, Section 13, of the Constitution of the State of Illinois and prayed for judgment against the County of Stark in the sum of Twenty Thousand Dollars. Attached to and made a part of the amended complaint, as amended, is a plat showing the lands owned by the plaintiffs, the location of Spoon River, Indian Creek, Slackwater Bridge, and State Aid Road No. 4, all referred to in said amended complaint as amended.

Counsel for the respective parties state that if the defendants are amenable to be sued for the alleged acts charged against them in this amended complaint as amended, then the judgment appealed from should be reversed. Counsel agree that only one question is presented by this record for our determination and that is whether a county and its superintendent of highways may be sued for the cause of action alleged in count one of the complaint and whether a county may be sued for the cause of action alleged in count five of the complaint. This question was properly raised in the trial court by the limited and special appearance of the defendants and their motion to dismiss.

215

Counsel for appellees insist that counts one and five of the complaint are based upon alleged tortious acts committed by defendants and that where the doctrine of respondeat superior applies counties are immune from actions sounding in tort. Counsel for appellants readily admit that in some instances a county cannot be sued for a tort but insists that count one of the instant complaint charges the defendants with unlawfully diverting water upon the lands of the plaintiffs; that a county or its superintendent of highways has no legal right to do so and, under the authorities, appellants are entitled to an injunction restraining defendants from continuing their illegal acts. Counsel for appellants insist that the gist of count V is that Slackwater Bridge restricted the flow of water in Spoon River, resulting in injury to appellants' property and that a county may be made to respond in damages under such circumstances.

Young v. Commissioners of Highways, 134 Ill. 569, was a suit brought against the Commissioners of Highways of the Township of Maquon, Knox County, to enjoin them from digging a ditch along the south side of the highway adjoining the lands of the plaintiff and to restrain them from diverting surface waters from their natural channels and discharging these waters upon the lands of the plaintiff through a ditch which they proposed to dig. The complaint alleged that the plaintiff owned 440 acres of land in Section 23 of Maquon Township and that the Commissioners of Highways of that township proposed to cut, and, in fact, had partly cut, a ditch four feet wide and eight feet deep on the road running from Spoon River through Salem Township, which road ran parallel with the plaintiff's 440 acres of land, and which ditch, if made, would drain at least one-third of Salem Township and throw upon plaintiff's land the water which accumulated, taking the water out of its natural course and flooding plaintiff's premises, thereby doing him

216

irreparable damage by reason of changing the natural flow of the water and casting it upon plaintiff's property. By their answer, the Commissioners of Highways denied these allegations, but upon a hearing the court found the evidence sustained the same and a decree was rendered in favor of the plaintiff in accordance with the prayer of his complaint. The Appellate Court, on appeal, reversed this decree, and the Supreme Court reversed the Appellate Court and affirmed the decree of the circuit court. The court, in discussing the case, said (p. 581): "From an examination of the evidence but one conclusion can be reached, and that is, that the commissioners of highways have diverted the water from its natural course, and turned it upon the land of complainant. Does the law authorize this action? The commissioners of highways, where they undertake to drain a public highway, possess the same rights, and are to be governed by the same rules, as adjoining land owners who may undertake to drain their own lands, except where they may be proceeding under the eminent domain laws of the State." The court then cited and quoted from Peck v. Herrington, 109 Ill. 611, and continued: "Under the rule established in this case, it seems plain that where water accumulating in a particular part of a highway will naturally run off in a certain channel or water-way, all that portion of the highway which lies in such a position as to naturally drain in that direction may be drained in such channel, although the flow of water may be increased. But the commissioners have no right or power to collect and carry a quantity of water along the highway which would naturally drain off in another direction, and discharge such accumulated water on the farm of an adjoining land owner. Nor have the commissioners the right to divert water from its regular channel, or place where it would naturally flow off, and carry it along the line of the highway, in ditches, for such a distance as they may desire or think proper,

and then discharge that water upon the farm of a land owner. This would be imposing a burden on the land owner, which the law will not tolerate."

In Holm v. County of Cook, et al., 213 Ill. App. 1, it appeared that the County of Cook maintained and operated an infirmary while the plaintiff, Holm, owned an adjoining farm. The plaintiff installed on his farm a drainage tile that entered into the Calumet Drainage District. Into this tile the infirmary discharged its sewage and other foreign matter. The plaintiff claimed that Cook County, by its conduct, had appropriated his tile. Defendant, County of Cook, contended that, being a municipality in the exercise of its governmental functions, an action in tort would not lie against it. The court held that the trial court erred in directing a verdict for the defendant and stated that the declaration set up a state of facts from which it appeared plaintiff's property had been both taken and damaged for public use without compensation. The court in its opinion quoted from Dillon on Corporations and then went on to say: "So, in the case at bar, the defendant, Cook County, acting within its general powers, constructed the said infirmary, the proper use of which required a sewerage system. In connecting its sewerage system with plaintiff's said tiling system and in using the latter to carry off the sewerage from the infirmary—a use for which it was clearly not intended and to which plaintiff did not consent—the defendant wrongfully appropriated and damaged plaintiff's property for public use. If, on the other hand, defendant's position were tenable, viz., that a county may never be sued in tort, then the aforesaid provision of our Constitution would be in fact nugatory, for it would leave the injured person remediless in situations as here presented."

In Roe v. County of Cook, 358 Ill. 568, a judgment for a substantial amount was recovered against Cook

218

County by the plaintiff for damages for the alleged taking and damaging of plaintiff's real estate. In his declaration, plaintiff alleged that the County of Cook constructed a subway which cut off access to and from his premises and built a stairway which encroached upon a public sidewalk located upon plaintiff's property. Judgment by default was entered against the County, and, on appeal, the defendant contended that no liability existed against it because it was a municipal corporation. The plaintiff relied upon Article 2, Section 13 of the Constitution which provides that private property cannot be taken for public use without compensation. In discussing these contentions, the court said (pp. 572-3): "We now turn to a consideration of the form of action in this case to ascertain whether the county of Cook is exempted from liability at common law because it is an involuntary municipal corporation. The liability of a county to respond in an action at law for damages resulting to an abutting property owner no part of whose land was physically taken in an eminent domain proceeding was directly involved in County of Mercer v. Wolff, 237 Ill. 74, where the cross-petition was stricken and petitioner 'remitted to his action at law for his damages.' The same doctrine was approved in the more recent case of Illinois Power and Light Corp. v. Talbott, 321 Ill. 538, where it was said: 'The constitution, in prohibiting the taking or damaging of private property for public use without just compensation, recognizes the right of the owner of property damaged by a public work to recover the amount of such damages. This right may be asserted by the owner as a plaintiff in an action at law where none of his property is actually taken, or as a defendant to an eminent domain proceeding for the condemnation of property actually taken. (County of Mercer v. Wolff, 237 Ill. 74.) In either case the right to the damages is the same, and its basis is the constitutional prohibition mentioned.' "

219

In the instant case, defendants argue that Savoie v. The Town of Bourbonnais, 339 Ill. App. 551, supports their position that plaintiffs are not entitled to the injunction prayed for by count I of their complaint. In that case, an artificial drainage ditch was built by the defendant, Town of Bourbonnais, in 1893. The building of this ditch caused the water which formerly followed a natural water course, and which frequently overflowed on the plaintiff's land, to use the artificial ditch. About 1949, this artificial ditch became filled up and out of repair and overflowed onto the plaintiff's premises. The plaintiff sought a mandatory injunction against the Town of Bourbonnais to require it to clean out the ditch. The court denied recovery and held it was the duty of the plaintiff to maintain the ditch. The court said that the defendants could not be compelled to perpetually secure plaintiff's property rights for him against the adverse forces of nature, but that it was up to the plaintiff to maintain the easement which he had in the artificial ditch. The court then went on to point out that the defendants had not attempted by any overt act to restore the water to its original course (something which the court stated the defendant would have no right to do) and that there was no allegation that plaintiff had been deprived of the right to protect his easement in the artificial drain and keep it in repair, and, therefore, there was no infringement of plaintiff's prescriptive rights which would warrant the issuance of a mandatory injunction or justify an award of damages. In the Savoie case the defendants took no affirmative action nor committed any overt act which diverted water upon plaintiff's lands or otherwise harmed him. The plaintiff's own failure to maintain the drainage ditch servicing his land was the cause of any damage he suffered. This clearly distinguishes the Savoie case.

■ Plaintiffs here allege in count I that in 1939 certain improvement work was done on the road which

220

runs through or along their premises by the defendant, Stark County, so that the road was widened and the slope of the road over the hill was lessened, and in doing this, the ditches on both sides of the road from a point near the bottom of the hill to the river were filled or destroyed, and that this eliminated the channels by which the water previously had been carried to the river. It was then alleged that, as a result of this improvement work by the County, the water which now falls on the road when it rains and the water which drains into the road comes down the ditches on each side of the road to a point near the bottom of the hill, and then, because the channels which the water formerly followed no longer exist, this water flows onto the farm land of the plaintiffs on each side of the road. The County thus, by its improvement project, has diverted water which formerly followed established channels onto the plaintiffs' land. In the Young case, 134 Ill. 569, supra, the Town Commissioners of Highways were enjoined from digging a ditch which would divert surface water onto the adjoining land of the complainant. The only difference between the Young case and this case is that here the improvement work has already been done. Certainly, if the Highway Commissioners can be enjoined before the ditch is dug, they cannot escape liability merely because the wrongful act is completed before suit is filed. Count I, as amended, of plaintiffs' amended complaint in our opinion states a good cause of action based upon the wrongful diversion of waters upon plaintiffs' lands.

Count five is directed against the County of Stark, and by it the plaintiffs seek to recover damages alleged to have been caused to their lands by water overflowing the dikes of Indian Creek. It is alleged that the defendant, Stark County, in the month of April, 1950, and immediately prior thereto permitted logs and debris to accumulate and become jammed at the piers and abutments of Slackwater Bridge on Spoon River; that

221

on April 25, 1950, as a result of rains to the north of said bridge, the water in Indian Creek and Spoon River rose to flood stage and, on account of the dam caused by the logs and debris, the water was not able to pass under the bridge, and as a result thereof the water in Spoon River overflowed its west bank; that after flowing over the west bank of said river, it flowed toward Indian Creek with such rapidity and force as to cause a levee on the southwest side of Indian Creek on plaintiffs' land to. "blow out" in three places and flood their land destroying fences and crops. It was then alleged that the damages which plaintiffs suffered were the direct and proximate result of the defendant's allowing the accumulation of logs and debris at Slackwater Bridge.

██ Counsel for appellants admit that under the authorities a county cannot be sued for a tort but insist that the gist of appellants' action, as stated in count five, is that substantial damage was done plaintiffs' property as a result of defendants' action in restricting the flow of water in Spoon River and that this amounts to a violation of the constitutional provision prohibiting the damaging of private property without adequate compensation. This count does not allege that the County has appropriated or used plaintiffs' land. It does allege that as a result of the lodgment of logs and debris at the bridge, water in Spoon River, after it rose to flood stage, was unable to pass under the bridge. Permitting logs and debris to accumulate and become jammed at the piers and abutments of the bridge was the wrong or tort charged against the County, and what the plaintiffs sought to recover by this count was damages occasioned thereby. Count five, therefore, sounds in tort, and the trial court properly so held. (Hedges v. The County of Madison, 1 Gilm. (6 Ill.) 567; Roe v. County of Cook, 358 Ill. 568, 573–4.)

222

Amended count six, as amended, is directed against David H. Sharkey, County Superintendent of Highways of Stark County, Illinois, and by it the plaintiffs seek to recover a money judgment for damages allegedly sustained by them as a result of the issuance of a temporary injunction without notice and without bond by the Circuit Court of Stark County.

This count alleged that on May 29, 1951, the County of Stark filed its complaint against Edgar Hargadine and others, which complaint was verified by defendant, David H. Sharkey, Superintendent of Highways of Stark County, and among other things, this complaint alleged the ownership by plaintiffs of certain described lands, the existence and location of Spoon River, Indian Creek, levees, State Aid Route No. 4, and Slackwater Bridge, all as set forth in the other counts of the amended complaint as amended. This count then charged that defendants were taking action to widen and deepen Spoon River north of Slackwater Bridge and prayed for a temporary injunction restraining defendants from raising and widening the levee along Spoon River in Section 33 in excess of that permitted by a prior order of the County Court of Stark County. This count then alleged that a temporary injunction was granted which, among other things, prevented Edgar Hargadine from doing any work on that portion of the levy along Spoon River in Section 33 south of Slackwater Bridge.

This count then alleged that on or about July 17, 1951, the circuit court, on motion of the defendants, modified the order granting the temporary injunction and removed therefrom the restraint against doing any work on that portion of the levee in Section 33 south of Slackwater Bridge and charged that while said temporary order was in effect plaintiffs were injured in that, subsequent to the issuance of said injunction and prior to its modification, Spoon River became flooded

223

and waters went through the levee immediately south of Slackwater Bridge at points where the levee was weakened, destroying plaintiffs' crops, which would not have occurred if the injunction had not been issued as plaintiffs planned to and would have repaired said levee prior to the flood except for the injunction. It was further alleged that the action in securing a temporary injunction insofar as it related to any work on the levee south of Slackwater Bridge was malicious and without probable cause and was granted without notice and without bond.

The sufficiency of this amended count, as amended, to state a cause of action against the defendant was challenged by a motion to dismiss, setting up the grounds therefor; viz.: that the defendant signed the verification to the original complaint for injunction in his official capacity as County Superintendent of Highways of Stark County; that Stark County is a municipal corporation and immune from liability, as is its officials; that the original temporary injunction was subsequently modified by the consent and agreement of the parties; that the temporary injunction as so modified by agreement was subsequently made permanent by the chancellor; that the flood waters referred to in this count were an Act of God of which defendant had no control; that there is no allegation that defendant acted negligently or wrongfully and that the alleged damages are remote and speculative. Upon a hearing this motion was sustained, and from an appropriate final judgment thereon plaintiffs appeal.

██ Counsel for appellants insist that this count states a good cause of action against Sharkey for malicious prosecution. We do not think so. The only charge made in count six against the sole defendant, David Sharkey, Superintendent of Highways of Stark County, is that he verified the complaint filed by the County of Stark, which resulted in the issuance of a

temporary restraining order. Sharkey signed this verification in his official capacity as an administrative officer of Stark County and as its County Superintendent of Highways. A suit for malicious prosecution is a suit sounding in tort. Stark County could not, under the authorities, be sued in tort, and, if the County for which Sharkey was acting could not be sued, then such immunity extends to him as an administrative officer of such County. A municipal corporation or quasi-municipal corporation can only act, as has been said, through its officials, agents, and representatives.

The County of Lake v. Cuneo, 333 Ill. App. 164, was a suit by the County of Lake to restrain the defendant from proceeding with the construction of a barn in alleged violation of the provisions of a County Zoning Ordinance, and a temporary injunction was so issued. Thereafter, the defendant answered and filed a counterclaim on the theory that the zoning ordinance was not applicable. The counterclaim prayed for an order restraining the county from interfering with the defendant in the erection of the barn. A hearing was had upon the pleadings, resulting in a decree making the temporary injunction permanent and dismissing the counterclaim. On appeal, this decree was reversed and the cause remanded with directions to enter a decree in favor of the defendant and issue a permanent injunction as prayed for in the counterclaim. Upon reinstatement of the case in the circuit court, a decree was entered in accordance with the mandate of this court, and the defendant filed his suggestion of damages which, on motion, was stricken, and an order entered denying all damage to the defendant, and he again appealed. (The County of Lake v. Cuneo, 344 Ill. App. 242.) In affirming the judgment and order of the circuit court, this court stated that the law has been settled in this state since 1844 that a County is not liable in an action sounding in tort to any individual who was injured by reason of its negligence and, after citing and reviewing

225

numerous cases, said: (p. 250) "The wrong of obtaining an invalid injunction in an action sounding in tort is and must be as much a wrong as if a county maintained a defective bridge which caused injuries to innocent persons. The wrong in obtaining the invalid injunction was created and could only be created by an act of an agent or attorney for the county. It must be admitted that the obtaining of a preliminary injunction was within the scope of the governmental functions of the county. We can see no distinction between the wrongs created by the acts of the county in the many cases above cited and the wrong created here. They are all wrongs committed by the county or like municipal corporations, tortious in character and under the law not compensable."

 It is also a well-established principle of law that no action for malicious prosecution will lie until the original proceedings complained of have been legally and successfully terminated in favor of the original defendant, who, in this case, would be the present plaintiffs. (Daily v. Donath, 100 Ill. App. 52.) This case sets forth the necessary elements required to maintain a suit for malicious prosecution, and a legal termination in favor of the original defendant is one of the elements held to be necessary. In order to state a cause of action for malicious prosecution, it must be alleged in the complaint that the original suit against the plaintiff in the suit for malicious prosecution has been legally terminated. (Bonney v. King, 201 Ill. 47.) Count six of the complaint in question contains no such allegation. The record further discloses that the injunction obtained by the defendant Stark County was modified insofar as it restrained the plaintiff, Edgar C. Hargadine, from doing any work on the levee south of Slackwater Bridge, and, further, the record shows that this modification was made in open court by the consent and agreement of said plaintiff and Stark County. The law is that where an action is terminated

226

by agreement or consent of the parties thereto or by the procurement of the defendant to that action as a matter of favor, there is no such termination as is necessary to support an action for malicious prosecution. (Barth v. Keller, 315 Ill. App. 200, 206; Ewe v. Angland, 325 Ill. App. 677, 689.)

The circuit court erred in sustaining the motion to dismiss count one of the amended complaint, as amended, and for that error the judgment order entered in Case No. 10834 is reversed in part and that cause is remanded with directions to overrule the motion to dismiss count one and enter an order requiring the defendants, The County of Stark and David H. Sharkey, as County Superintendent of Highways of Stark County, to answer that count. The judgment of the circuit court as to count five in Case No. 10834 is affirmed. The judgment of the circuit court in Case No. 10884 is affirmed.

The judgment in Case No. 10834 is affirmed as to count five; as to count one, the judgment is reversed and the cause remanded with directions.

The judgment in Case No. 10884 is affirmed.

EOVALDI and CROW, JJ., concur.